6366 Al Ajan v. USA, Obama, Arden, Phippen, Versailles, Disparities, and Decisions You may proceed. May it please the Court, Alan Ajan appeals for the first time a new sentencing judgment in his criminal case. Have you reserved any time, Ms. Farris? Yes, Your Honor, I've reserved three minutes. Apologies. Alan Ajan appeals for the first time a new judgment in his criminal case entered following his successful Section 2255 motion. That judgment must be vacated for three reasons. First, the District Court erred under Posca Relay when it failed to recognize its own  Second, under Segele and Pepper, the District Court was required to re-sentence Ajan de Novo. Third, and finally, the resulting sentence is illegal because it contains plain Booker error and an invalid career offender enhancement. This Court should also hold that Ajan need not obtain a Certificate of Appealability to pursue this appeal. The COA statute, by its plain text, does not apply to an appeal targeting only the new federal habeas motion. This Court's jurisprudence internalizes that interpretation and every circuit to consider the issue has held consistently. Unless the Court has further questions on that point, I would like to stand on my briefing on that issue and address the merits. Well, were things that simple, we could wrap up and go home. It seems to me we've got an interesting and arguably difficult dilemma here because the Andrews that this is of the nature of a 2255 and therefore you've got to have a COLA. The Fourth Circuit and I think one other circuit have looked at that case in Haddon and said, well, these are really hybrid actions. They have something to do with both 2255 and they have something to do with the criminal proceeding. And so that reaches a pretty, seems to me, equitable solution where then you don't have to have a COLA. But is it true to Andrews? That's the problem. Do you want to speak to that? Yes, and I would give three responses. It is true to Andrews for one particular reason. The Supreme Court in Andrews was analyzing the concept of entire finality of the whole proceeding. Essentially, the Court there laid down an important rule that neither appeal can proceed until essentially both the final order that resolves the merits and the new judgment are final. There are very good reasons for this. If you could proceed on the new judgment without waiting for the finality of the order granting or denying relief, essentially you would have a paradox because if the Court reconsidered that order and decided that no relief was merited, you would essentially have a judgment that could not legally exist. I would also point out that the Court there did not closely parse the text of the COA statute, which says that a COA may only be required for the final order in a proceeding under Section 2253C. The word the there is significant. There can only be one such final order. I largely think that you've said that correctly, but how do you deal with the phrase in Andrews that says that an action under 2255 is a separate proceeding independent of the original criminal case? And then it goes on to say the Criminal Appeals Act had no applicability to such proceeding and instead, dot, dot, dot, an appeal may be taken to the Court of Appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus. And that being true, then you have to have a COLA. I think the best response, and granted, it may not line up perfectly, but I think that the best response is the one that this Court gave in Segele. It recognized a distinction between an appeal from the habeas motion and an appeal from the resulting judgment. The Court distinguished between those two and held that the contents of the former did not control review on the latter. Also, this Court on many occasions has done exactly, essentially, what the result was here. This Court has recognized that when a court, a district court uses Section 2255's procedural mechanism to reinstate an out-of-time appeal, what results is a new judgment that contains exactly the same terms as the old judgment. And in every case, this Court has granted direct review without requiring a COA. So if you get by that, and you get to the Court of Appeals as a part of this hybrid appeal, whatever it really is, explain to me again why do you get a complete resentencing in connection with what was a correction of the original judgment? So, in other words, he appealed saying, no, this gun charge can't stand. The Court agrees. It's now excised from the judgment, and the judgment is corrected, but everything else remains the same. So why do you start over then for everything else, particularly when, as I understand it, he has a separate civil proceeding pending before another panel that deals with all sorts of other issues? I believe that appeal has now been—it originally was disposed of. I believe Alan Ajon in that has requested reconsideration. But first of all— A single judge in the other case denied a COA. The COA. It was a petition for panel rehearing pending, which means it'll go to a three-judge—internally, if you don't know—means here it goes to a three-judge panel upon which that original judge does not sit. That's the way we do things. Right, that's correct. I would give two responses. First would be this Court has recognized in United States v. Means that a petitioner is required to file separate notices of appeal from the order denying relief and the resulting judgment. This is so because those two are different proceedings. One is a criminal proceeding and one is a civil proceeding that requires a COA. But when we get up to the appellate stage, there are good reasons that Ajon should get a brand-new de novo review of his entire sentence. First of all, this Court in Pasquarela has already recognized the significant point that upon a prisoner's challenge to one count in a multi-count conviction, the District Court then has authority to reevaluate all the remaining sentences on the other counts. This point is not in dispute. On page 26 of the government's brief, the government says that it's essentially not disputing the District Court's authority to re-sentence Ajon on all those sentences. In fact, the government has taken it— Well, you might have had a different case here. Again, the District Judge chosen one of the four remedies that are available under the statute in connection with the grant of a 2255 and chosen to do a full re-sentencing. Obviously, you wouldn't be appealing unless you didn't like the result. Maybe the government would be. We don't know that. But here, it appears at least as if the District Judge chose the fourth option of simply correcting the sentence to excise the improper count of conviction and just re-imposing the sentence. That's within his authority, is it not? It's actually not. I would address two points there. First of all, this Court in Pasquarela did not distinguish between a correction and a re-sentencing, but there is a basis for recognizing such a distinction. In 1948, the COA statute was written following the advent of Criminal Rule Procedure 35, which I believe occurred in 1944. The correction proceeding there addresses a technical or arithmetic error. Count 10 was no technical or arithmetic error. That was a sentence convicting Ajon of a crime that did not exist. The Court could not simply excise it as it would in a Rule 35 proceeding. Also— Why? Why can't you just excise that? This Court has recognized the— Let me say it to you a different way, back from my District Court days. For guideline sentencing, there's groupings and multiple count adjustments and all those kind of things. So I understand that sometimes excising a conviction, and maybe most of the time, when the sentence is for everything else. But here, and maybe this is an unusual case, it looked like—so tell me why I'm wrong here—that you could simply excise that conviction and let everything else stand because excising the one by definition does not affect the other ones under the facts of this case. Am I right about that? You're incorrect about that under Pasquarela. Pasquarela says that the effect of challenging a single count of a multi-count conviction is the destruction of the finality of the remaining sentences. That the Court accepted the government's erroneous arguments that granting relief would not alter the remaining sentences. It did alter them. It destroyed their finality. At that point, Pasquarela recognizes that the District Court did have discretion to change the sentences, and that discretion was not recognized. Sakelay further holds that— Well, who's to say it wasn't recognized? Who's to say the judge simply chose to use the correction mechanism and knew that he could reopen the rest and didn't decide he didn't want to? That's true from two points in the record. First of all, the memorandum opinion accepts the government's argument—that's basically a quote—says the government correctly asserts that a grant of relief on count 10 will not alter the remaining sentences. Again, you can tell that the District Court did not recognize this discretion by the purported to grant. It purported to vacate only the count 10 conviction. Section 2255B authorizes no such procedure. Under Magwood, the Court is required to vacate the entire judgment, and that's true to the text of the statute. Right. That was going to be my point. In the granting, 2255, it does require a full vacate—vacator of the entire— Full vacature of the entire judgment, and the result is a new judgment. All errors of which are new, they are challenged for the first time, whether they were made one time or two times. Also, Segele requires essentially de novo resentencing any time there are fact issues as to the sentence, which there are here. And also, under Pepper, at least— On the fact issues that he wants to raise, were all of them raised in the direct proceeding? No, and they were not required to be. I know you have post-judgment rehabilitation, but aside from that, they were not involved in his direct appeal. In his Section 2255 proceeding or in the original direct appeal? Direct appeal in the criminal case. No, not all of them were, and there are two very important reasons. Essentially, then, what he wants to do is he—I mean, this is really two bites at the apple, and maybe that's proper in connection with everything other than the excise conviction. He gets direct appeal. He raised lots of different things. He loses that. He files his 2255. He wins that on the excise conviction. Now he wants to go back and start over and raise new things in connection with the remaining counts of conviction, right? If I can briefly respond— Why is that proper? I'm just trying to figure that out. My time is almost up, but if I may be permitted to respond. There are two reasons. First of all, this is not a second bite at the apple. This is not a windfall, as the government contends. The government has taken advantage of this exact same rule of law under Pasquarelli, usually to the prisoner's detriment. There's an equal possibility that his sentence—that any prisoner's sentence could be raised or it could be lowered. Here, the error was very prejudicial to Ajon, since there's strong indications that he would have received a lower sentence. And second, under Magwood, the judgment here is entirely new. It is not constrained by the errors that could have been brought with respect to the original judgment. Sekalei holds this as well. The review here is not in any way confined by the issues that could have or should have been raised in the Section 2255 motion. All right. Thank you. May it please the Court. Deborah Brenneman for the United States. This case poses the interesting question about under which circumstances, if any, a certificate of appealability is required for an appeal from the grant of 2255 relief. The issue has never been decided by this Court, likely because very few criminal defendants who prevail on 2255 review then seek further review and relief from this Court, particularly on claims not raised in their 2255 motion. So why shouldn't we follow Haddon? The reasoning in Haddon is entirely appropriate. I would submit this Court should follow the reasoning in Haddon, but not the ultimate conclusion. To my knowledge, Haddon is the only case that holds that an appeal from the amended judgment following the grant of 2255, regardless of whether or not it's a new sentence, regardless of whether the guidelines range were recalculated, is appropriate without a certificate of appealability. Most courts have created this equitable exception, so to speak, to the certificate of appealability requirement, wherever the grant of 2255 relief involved recalculation of the resentencing hearing, on the ground that defendant would otherwise be deprived of appellate review of the new sentence. In fact, the Haddon Court specifically said that. They said, our purpose here is to put the defendant in exactly the same position he would have been had there been no error in the first place. The error that the district court was attempting to correct, the vacator of the conviction and sentence on count 10, based on the error identified in Combs, did not affect any of the other counts. And vacating only that count, where they're not interdependent, which was the situation in Pasquarelli, because they were not interdependent, the court could vacate, just excise that one count and the corresponding sentence. That's how you distinguish Pasquarelli, that in that case, the end result of the vacation was interdependent with what was left? In Pasquarelli, the court specifically talked about a package theory and the sentences being interdependent. The guidelines range was recalculated in Pasquarelli. Here it was not. So you distinguish that by saying in this particular case, they were not interdependent? Correct. In most cases, they would be. And that's why we have so many cases from this circuit and others that say when a 924C conviction, particularly, is vacated in 2255 review, it matters. It usually matters because then a firearms enhancement is available as to the underlying offense. Just because of the unusual facts of this case and Ajan's career offender classification, turns out it doesn't make a difference here. That's in footnote 10 to page 24 on our brief. We went through the guidelines calculations. His guideline range would not have been affected. But even if you get around that, for that reason, your opposing counsel still relies upon Sekele to say that you get a full resentencing. On a post-Booker new judgment. It's a very similar case in that the guidelines range was recalculated. And his guidelines range was higher. The court didn't simply strike the sentence that corresponded to the 924C count. So you're saying, essentially, that Haddon is OK. The government's OK with Haddon, a Haddon approach. Haddon approach, yes. If the judge here actually changed the sentence with respect to the remaining counts. Correct. But if the government didn't change the sentence, then both of the cases they're relying upon are distinguishable. Correct. And we base that on the words, the new sentence. I mean, it is a new sentence in the sense that the original sentence, as to all counts, was vacated. That's what 20 to 55 requires. But it is not a new sentence in that it was based on any new calculations or new evidence presented to the court. You know, our position that a certificate of appeal was based on any new evidence presented to the court because there was no hearing, and the judge didn't let him. Right. He had, Ajon had not alleged any information that would have affected any of the counts. The sole relief he requested was, you know, as to his sentence, was that count 10 be vacated. He received precisely what he requested. Well, what would be the procedure that would be normally followed then after the entry of the 20 to 55 judgment, directing the district court to vacate the underlying judgment? Here, the district court just went ahead and issued either an amended, corrected, or- Amended judgment. New judgment, however we want to characterize that. I take it there was no opportunity presented to the, in this case, the prisoner then to assert any issues. So to say he didn't assert any issues seems to me to be a little disingenuous when unless I'm missing something, he didn't have the opportunity to. Was he even represented for purposes of resentencing? Counsel had been appointed, but not for purposes of resentencing. Right. Counsel had been appointed for him as to this Combs issue. And admittedly, the government originally opposed his request for relief here. We later reconsidered based in part on our treatment as co-defendants in this case. So in a way- All three of whom had the same error, count 10. In a perfect way, this is kind of like a Rule 35 in the sense that there's additional cooperation during the one-year period. The government comes back. As far as I know, district judges are still simply looking at that and then revising the sentence. There's no input, I don't think, from the defendants in those cases. So would you analogize that procedure to this procedure? It's similar in some ways. But of course, the statutory authority underlying it is very different. District court can't modify a sentence without specific statutory authority. Here, the authority comes from 2255. And 2255 provides that, maybe I'm getting ahead of myself. Stop me here if I'm not answering your question. That any appeal from a final order in a 2255 proceeding requires a Certificate of Appealability. Congress could have clarified to say, we mean a final order denying relief. They made no difference between grant and denial. So I'd submit that the plain language of 2253d suggests that we need a Certificate of Appealability in this case. Although the court entered the order, the initial order saying that defendant would be granted relief. Now, if we need a COA in this case, can this panel just grant the COA? If this court were to find the defendant had satisfied the standard, we submit that defendant cannot satisfy that standard here. Because it's not of constitutional dimension or? Correct, because it's not of a constitutional dimension. But what are we looking at? Are we looking at the constitutional dimension of these new, what I'll call the new challenges to the amended judgment? Or is it sheltered by the original constitutional violation that got him the 2255 relief to begin with? And this is just simply a continuation of that process because we're dealing with remedies. Any challenge to any counts other than count 10. You know, any challenge as to those new sentences, the only counts on which a sentence was imposed in the amended judgment are precluded because they could have been raised in his initial direct appeal. Why is it a new game when there's a vacator of the entire sentence? New sentence, why not? Why start all over? I think part of it's due to judicial efficiency. You know, here the error pursuant to Combs affected only one count. That count was a count that had a statutorily mandated consecutive sentence. So it was not truly interdependent. And because of the way the guidelines applied to Ajon as a career offender, there were no other guidelines enhancements that had been foregone at the original sentencing. You know, none that would have made a difference in the final guidelines range. That's the government's position with all due respect, but nobody was present to counsel Mr. Ajon at that point, correct? And that's a fairly critical point for him, is it not? But a defendant's not entitled to the representation of counsel on collateral review generally. So the fact that the court, in abundance of caution, appointed counsel for him as to this one issue doesn't suddenly create more rights for him. The fact that he gets count 10 vacated and the corresponding sentence dismissed, 300 months off a sentence, does not suddenly recreate authority to revisit all of the other counts. I think that's what this court held in the Aiken case, for example, says that any issues from the original order that aren't modified by the amended judgment can't be appealed. In that case, it's not a 2255 case. There was an original judgment. The court later entered an amended judgment, changing only the date in which defendant was supposed to report to custody. And he appealed from the amended judgment, trying to challenge things he could and should have raised from the original judgment. Here's what bothers me about the government's position, if you could humor me to try to explain it and then you can respond to it. You want to distinguish these two cases by saying, well, that might be OK under Haddon, provided that there is some change in the remaining counts of conviction, the sentence for the remaining counts of conviction. That's not true here. That's essentially your argument, right? Yes, it is. So what would happen then, if that's some sort of magical dividing line, if there was a case where the government said, these are not interrelated and there's no change, so therefore COLA and so on and so forth. But the prisoner says, no, they are interrelated for some legitimate reason. And the district judge simply screws up, simply makes a mistake in the resentencing, because they were interrelated in connection with grouping or whatever it may be. OK. Under the government's position, there would be no way to correct that error, would there? Because the district court who did it is going to say, I didn't screw up, I'm not going to grant a COLA, and we can't grant a COLA because it would not be of a constitutional dimension. So that just seems kind of unfair. But in that case, we're presuming that there is some recalculation of the guidelines range. Any case in which there's- I want you to consider any case where you claim there was no duty, there was no basis to recalculate, and therefore a COLA is required. That's the government's position. But it turns out that the government is wrong. So how does that ever come before the court? How would somebody get it to us? You've stumped her. I think you may have stumped me. I'm trying to think through the rest of this hypothetical here. I want to make sure I don't speak out of turn. I think that the reasoning for why we have a certificate of appealability in the first place applies, those public policy concerns that affect when we need one and when we don't need one, the things they're all discussed in Haddon, are the things that give us the dividing line here for when a certificate of appealability is required and when it isn't. Here, allowing- But my hypothetical does create this category of non-constitutional errors in the- I'll use the phrase re-sentencing, whether that's a proper- Whether or not there's a hearing, sure. Whether or not. It leaves a whole category of potential errors that are largely not refuses to grant a COLA. I think my trouble with the hypothetical is I'm having a very hard time imagining any case in which that would occur. I know that's not a good response to a hypothetical, but there's- If this court were to find that they want to adopt Haddon's reasoning and the ultimate conclusion, I don't have a problem with that. If this court wants to reach the merits and say a certificate of appealability isn't resolved here, this case squarely presents it to the court to say whether or not there are different- Sure. Then we get to the merits of these other claims. Then what's your- How do you avoid re-sentencing here on the merits? Well, the reason we avoid re-sentencing on the merits is because the nature of 2255 relief is a matter within the broad discretion of the district court. And here, the court didn't abuse its discretion. We know this from the other evidence about how the guidelines range are calculated, what else was going on. You're saying by choosing to correct the sentence. By choosing to correct only the count and the corresponding sentence for which an error had been alleged. Otherwise, we're giving defendant that true second bite at the apple, unwarranted in our view. If we say simply by obtaining relief on one claim, you may now litigate anything else as to your sentence, which was previously affirmed by this court in 2004. So was I correct in my exchange with Ms. Farris that had the judge exercised his discretion, and I realize there's an underlying dispute about whether he did or didn't and knew what his discretion was, but had he clearly gone right to a re-sentencing and started over, do you concede from the government standpoint that would have been within the judge's discretion? That is one of the options the court has under 2255. Under that process, then, Booker would come into play, and he gets to argue voluntary rather than mandatory, and he gets to talk about post-offense rehabilitation, all those things. That'd be OK. Not necessarily, because Booker doesn't apply to collateral review proceedings. So it depends to what extent the court structures its 2255 relief, and that's part of the reason it's hard to come up with good categories for this, because they're necessarily fact-specific. And it's part of the reason we give district courts so much discretion over crafting these remedies to solve the harm there. Well, if the remedy under 2255 is a correction, whatever that really means, then your position would be Booker doesn't apply. Correct. But if the judge chose to exercise his discretion to re-sentence. If the judge decides that full re-sentencing is warranted, the court can nonetheless limit the issues that are litigated at that re-sentencing, because the point of 2255 is to put defendant in the place he would have been, had the original error not occurred. So back to my question. If the court granted a full re-sentencing, would that be violative of the district judge's discretion? Not in my view, no. So here, then, what you really then end up hanging your hat on is that the judge chose one of the four remedies under 2255 and did not abuse his or her, I've forgotten, discretion in connection with making that decision. That's correct. All right. We submit the defendant hasn't established any abuse of discretion. So regardless of what this court finds about the necessity of a certificate of appealability in this context, I would suggest that we should split that. Haddon speaks very broadly about any case involving a grant. I would suggest that the court should at least consider whether that should only apply to cases in which the sentences are interdependent, or the court recalculates the guidelines range, or conducts a full re-sentencing. But I leave that to the court. Thank you. All right. Thank you. What about that, Ms. Ferris? May it please the court. I have a lot of issues to respond to, so I'll try to go quickly. First of all, I would like to point out that two Supreme Court opinions fundamentally foreclose the government's position. The first is Magwood. Follow a judgment entered following a grant of habeas relief is a new judgment. All errors are challenged for the first time. That case came up in the context of deciding whether a petition was second or successive. But if that rule is not applied here. Was the new judgment in that case identical to the other? It was identical. It was the same death penalty sentence. And here, in that case, the state actually conceded that new errors of the type that the government could not conceptualize got free review. They conceded that. Here, the government argues for a no opportunity rule instead of a one opportunity rule. But the court. It's always a little dangerous of relying upon a death case. Because as your side almost always says, death is different. So it's hard to understand how one death penalty, one death sentence could be different than another death sentence. That's true. But the second. We're not talking about death. Do we have any non-death cases that address that point? I'm not sure I could submit a letter. But I know the Second Circuit has interpreted Magwood to be applicable in 2255 as well. But if you don't adopt Magwood's rule here, the scope of collateral review would then be actually broader than the scope of direct review. And that's a result Congress would not have intended. Second, Pepper fundamentally changed the re-sentencing game. When a court has full discretion to re-sentence a petitioner, the court has held that the district court has a duty to re-sentence the prisoner as he stands before the court on the day of sentencing. The goal is no longer to put him back in the position that he would have been in but for the error. That is a fundamental change in the law. Why is that true with respect to one of the four 2255 reliefs of correction? Because the discretion is the same. The Supreme Court has recognized that it's significant when a court has discretion to increase the defendant's sentence as it does here. Certainly, this requires the additional procedural protections of de novo sentencing review and an opportunity to present the evidence. I would also like- So you're saying that a judge doesn't have discretion to simply correct and not re-sentence on the remaining counts of conviction? Not when it doesn't fall within the purview of Rule 35, I would submit. Is there a new PSR order in this case? Yes, there should be. Was there? No, there was not. But that is not a material distinction under Segele. You think these Supreme Court cases then intended to correct the law with respect to the fourth option under 2255, the correction option? Do any of them say that? No, they do not. But Pepper's discussion of the court's full sentencing discretion is key here. And Segele also recognized that concept even before the Supreme Court did in Pepper. So the same results should follow. But you're not really talking about discretion. You're essentially saying- you're using the word discretion, but your argument, I think, leads to the conclusion the district judge has no discretion to merely correct and not re-sentence on everything. Saying that the district judge is required to do that is not a matter of discretion. Oh, I see my time is up. May I be permitted to respond? Please. It is true that Section 2255B grants the court broad discretion. But that statute has to be interpreted in light of other statutes, such as Booker, and also in light of the Supreme Court's precedent, such as Pepper. Why does it have to be interpreted in light of Booker if Booker doesn't apply to collateral review? Because the case is no longer final. I see. OK. Thank you very much. The court sees that you were appointed in this case, Ms. Ferris. Let me just say on my behalf, and I'm sure I speak for the panel as well, you've really done an extraordinary job here in what is really, really, I find, a complicated matter with all sorts of procedural twists here. So thank you for your assistance, both to Mr. Aljan and to the court. I suspect he probably doesn't know how good a lawyer he actually got. Well, he's now a paralegal. So I hope he can appreciate me some day. Thank you. Ms. Brenneman, you did a fine job as well. Thank you. You don't get kudos normally because you're just doing your job. You're from the government. You're here to help, right? All right.